IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00800-MSK-MEH

SAMUEL GRADY PUTNAM, JR.,

    Plaintiff,

v.

TELETECH HOLDINGS, a Delaware corporation, and
TELETECH GOVERNMENT SOLUTIONS, LLC., a Colorado limited liability company,

    Defendants.
_____

**OPINION AND ORDER DENYING MOTION TO COMPEL ARBITRATION**
_____

    **THIS MATTER** comes before the Court pursuant to the Plaintiff's unopposed Motion to Amend Complaint **(# 6)**[1]; and the Defendants' Motion to Dismiss for Lack of Jurisdiction, to Compel Arbitration, and to Stay **(# 11)**, the Plaintiff's response **(# 12)**, and the Defendants' reply **(# 13)**.

**FACTS**

    The Plaintiff is a former employee of the Defendants. As relevant to the instant motion, the parties have enjoyed a contentious on-again, off-again relationship. The Plaintiff began working for the Defendants in August 1997. At that time, he signed an employment agreement ("First Agreement") that provided that "any disputes that arise . . . which cannot be resolved within the Company, shall be submitted to binding arbitration." *Docket* # 11-4 at ¶ 3. Further,

---

[1] There being no opposition, the motion is granted. All references herein refer to the Amended Complaint **(# 5)**.

1

the First Agreement provided that the arbitrator would have authority "to resolve any dispute relating to the interpretation, applicability or enforceability of this Arbitration Agreement." *Id.* at ¶ 8.3.

In the Spring of 2001, the Defendants terminated the Plaintiff. The Plaintiff disputed the propriety of that termination, and the parties eventually agreed to settle the dispute by rehiring the Plaintiff. Pursuant to that rehiring, in June 2001, the Plaintiff executed another employment agreement ("Second Agreement"). Like the First Agreement, the Second Agreement provided that all disputes (with certain specified exceptions) would be subject to binding arbitration. *Docket* # 11-5 at ¶ 8.1. The Second Agreement also provided that "any previous agreements between the Parties concerning arbitration are hereby cancelled, and replaced by this paragraph." *Id.*

In 2004, another dispute arose among the parties, and eventually, the parties entered into a settlement agreement ("Third Agreement") resolving that dispute. The Third Agreement provided that the Second Agreement "is hereby terminated . . . and that both parties have fulfilled their respective obligations and responsibilities" under that agreement. *Docket* # 11-6 at ¶ 1. The Third Agreement further stated that the Plaintiff's continued employment would be "governed by [the Defendants'] incentive plans, policies, procedures and practices generally applicable" to all employees.

In 2005, the Defendants again terminated the Plaintiff. The Plaintiff then filed the instant action, alleging claims for: (i) breach of contract relating to sales commissions; (ii) breach of the covenant of good faith and fair dealing, again relating to sales commissions; (iii) promissory estoppel, also relating to the terms of his compensation; (iv) unjust enrichment, in that the Defendants have been enriched by the Plaintiff's efforts and failed to properly compensate him; (v)

a claim for unpaid wages under the Colorado Wage Claim Act, C.R.S. § 8-4-101 *et seq.*; and (vi) a hybrid claim asserting, within a single cause of action, violations of the Age Discrimination in Employment Act, 29 U.S.C. § 623; Title VII of the Civil Rights Act of 1964,[2] 42 U.S.C. § 2000e *et seq.*; the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.*; and the state-law tort of wrongful discharge.

In the instant motion **(# 11)**, the Defendants seek to compel the Plaintiff to arbitrate his claims, dismissing this action for lack of subject-matter jurisdiction. In addition, they seek a stay of proceedings pending any arbitration. The crux of the Defendants' argument turns on the syllogism that: (a) because the Second Agreement terminated the duty to arbitrate created by the First Agreement, and (b) because the Third Agreement terminated the Second Agreement, including the Second Agreement's termination of the First Agreement, then (c) the Third Agreement effectively revived the First Agreement, and thus, the Plaintiff remains bound by the First Agreement's arbitration clause. From there, the Defendants argue that the First Agreement vests within the arbitrator the authority to determine whether the Plaintiff's claims here fall within the arbitration clause, and thus, the Court must compel arbitration of both the question of whether the Plaintiff's claims are subject to arbitration as well as the merits of those claims. In the alternative, the Defendants argue that, under Colorado law, the duty to arbitrate survives the termination of the contract containing the arbitration agreement, such that disputes that arose

---

[2]The Plaintiff's membership in a class protected by Title VII, *see* 42 U.S.C. § 2000e-2(a) (protecting employees against discrimination based on "race, color, religion, sex, or national origin"), is not apparent from the allegations in the Amended Complaint. Likewise, the public policy allegedly implicated by the Plaintiff's termination is not clearly articulated with regard to his claim for wrongful discharge. *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666-67 (Colo. 1999) (wrongful discharge exception to employment at-will requires proof of public policy implicated in employee's termination).

3

during the life of the contract but which were asserted after the contract terminated remain subject to the contract's arbitration provision. *Citing Christensen v. Flaregasa Corp.*, 710 P.2d 6 (Colo. App. 1985). The Defendants contend that, because the Plaintiff's claims arose during times when either the First or the Second Agreement were in effect, the subsequent termination of those agreements prior to the commencement of this action do not relieve the Plaintiff of the duty to arbitrate under the terms of the agreement in operation at the time the claims arose.

In response **(# 12)**, the Plaintiff disputes the Defendants' premise that the Third Agreement somehow revived the First Agreement. Further, he argues that, even if the arbitration clause in the First Agreement was revived, that clause is unenforceable as a matter of law, because it requires the Plaintiff to pay half the costs of any arbitration. In response to the Defendants' arguments regarding *Christensen*, the Plaintiff states that he is not purporting to assert any claims that arose prior to the Third Agreement, and indeed, asserts that the Third Agreement waived any then-existing claims by the Plaintiff. Finally, the Plaintiff argues that, even if his claims are otherwise subject to arbitration, his waiver of a right to pursue an Age Discrimination claim in court is ineffective pursuant to 29 U.S.C. § 626(f).

In reply **(# 13)**, the Defendants: (i) repeat their assertion that the question of arbitrability is to be decided by an arbitrator; (ii) argue that the allegations in the Plaintiff's Complaint constitute "judicial admissions" that reveal that the Plaintiff's claims accrued during the life of the First or Second Agreements, and are thus subject to the arbitration clauses in those agreements; (iii) points to caselaw concluding that an arbitration agreement should not be considered terminated by a subsequent agreement like the Third Agreement; (iv) that the provisions of 29 U.S.C. § 626(f) do not apply because the Plaintiff is required to arbitrate, not waive, his Age

Discrimination claims; and (v) the arbitration agreement is not invalidated by the cost-sharing provision because that provision occurs only in the First Agreement, because the Defendant intends to pay all arbitration costs itself, and that invalidation of an arbitration agreement on cost-sharing grounds is limited to circumstances where the cost of arbitration is prohibitively expensive.

## ANALYSIS

The Court addresses the parties' arguments in their most logical order, not necessarily the order in which the parties have presented them in their briefs.

### A.  The nature of the Plaintiff's claims

The first matter to be determined is the nature of the Plaintiff's claims.  Depending upon when each claim accrued, the claim may be subject to the particular terms of the First, Second, or Third Agreements.

The Court need not initially engage in a claim-by-claim analysis, as it is clear that the parties' primary dispute in this regard turns on a more circumscribed question: whether the Plaintiff's claims arose before or after June 30, 2004, the date of the Third Agreement.  The Plaintiff contends that his claims all arose after June 30, 2004, and thus, are governed only by the terms of the Third Agreement.  The Defendants argue that the Complaint appears to allege claims arising as early as 1999.

The Complaint is somewhat difficult to parse, as its allegations do not necessarily appear in chronological or any other topical order, nor does the Complaint identify the particular objects of the Plaintiff's claims with particular specificity.  Upon a casual review of the Complaint, the Defendants' argument appears to have some merit.  For example, the Complaint appears to allege

a claim for commissions payable on a contract between the Defendants and the General Services Administration ("GSA"), secured by the Plaintiff as early as 1999. *Docket # 5, ¶ 24.* The Complaint also references a contract secured by the Plaintiff in 2003. *Id.* at ¶ 17. At the same time, it is conceivable that the Plaintiff's claims for commissions arise not from the creation of these contracts, but from their continued generation of revenue. For example, paragraph 18 of the Complaint refers to the 2003 contract, but discusses the Plaintiff's entitlement to commissions resulting from revenue received on that contract in 2005. Similarly, the last sentence of paragraph 24 suggests that the Plaintiff is claiming that he is entitled to commissions under the GSA contract resulting from revenue generated in 2005 and 2006.

Ultimately, it is not necessary to find a precise date upon which the Plaintiff's claims accrued. As the Plaintiff concedes, the Third Agreement expressly releases "any and all claims, demands, liabilities, [etc.]" which he could raise against the Defendants up to and including June 30, 2004. *Docket # 11-6, ¶ 2.* Thus, to the extent that the Plaintiff's Complaint might be susceptible to a reading that it asserts claims arising prior to June 30, 2004, the Plaintiff has expressly disclaimed any intention to pursue such claims, and indeed, any such claims would be subject to dismissal as released. Thus, all of the contract-based claims[3] asserted in this case necessarily arose after June 30, 2004, during the lifetime of the Third Agreement.

---

[3]The Plaintiff's Age Discrimination claim clearly arises as of June 17, 2005, the date the Plaintiff was terminated. No reasonable argument can be asserted that this claim arose during the lifetime of the First or Second Agreements.

### B. Duty to arbitrate claims arising under the Third Agreement

Having determined that all of the Plaintiff's claims arose during the Third Agreement, the next step is to determine whether the Third Agreement creates a duty to arbitrate those claims. Determining whether an agreement to arbitrate exists is a matter for resolution by the Court, unless there is "clear[ ] and unmistakabl[e]" evidence that the parties intended to have an arbitrator determine arbitrability. *Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998). Barring "clear[ ] and unmistakabl[e]" evidence that the parties agreed otherwise, the question of whether there is an agreement to arbitrate is a matter for the court, not an arbitrator. *Id.* In deciding whether an agreement to arbitrate exists, the Court does not indulge in any presumption in favor of arbitration. *Id.*

The Third Agreement contains no arbitration clause whatsoever. Rather, it is clear that both the intent and operation of the agreement is to ensure that the Plaintiff's continued employment would be "governed by [the Defendants'] incentive plans, policies, procedures and practices generally applicable" to all sales and account management employees. The Defendants do not argue that such "generally applicable" policies include arbitration, and thus, the Third Agreement is not susceptible to an interpretation that the Plaintiff is obligated to arbitrate his claims.

The Defendants offer two somewhat-related arguments in opposition: (i) that the Third Agreement operated to revive the arbitration clause in the First Agreement, and (ii) that the duty to arbitrate outlasts the termination of a contract. In support of these contentions, the Defendants cite to *Encore Productions, Inc. v. Promise Keepers*, 53 F.Supp.2d 1101 (D. Colo. 1999) and *GATX Management Services, LLC v. Weakland*, 171 F.Supp.2d 1159 (D. Colo. 2001). In

*Encore*, the parties were subject to an agreement containing a mandatory arbitration clause. A dispute arose, and the parties resolved that dispute by entering into a new agreement, terminating the original agreement and establishing new obligations. 53 F.Supp.2d at 1107. When a dispute arose under the new agreement, the plaintiff sued, and the defendant attempted to enforce the arbitration provision of the original agreement. The court noted that "an arbitration provision in a contract is held to survive the termination of that contract unless there is clear evidence that the parties intended to override this presumption." *Id.* at 1108. However, it also observed that the presumption of a continuing duty to arbitrate can be rebutted by either of two situations: (i) where the parties expressly or clearly implied an intention to repudiate arbitrability, and (ii) where the dispute cannot be said to arise under the original contract. *Id.* at 1109. Finding that the parties had not manifested a clear intention to repudiate the arbitration provision in the old agreement, and that the claims at issue rose out of that agreement, the court found that the new dispute was subject to arbitration, notwithstanding the termination of the old agreement by the new agreement. *Id.*

The facts of *GATX* are less complex. There, the defendant employee agreed to a broad arbitration clause in his contract with the employer. Following his resignation and hiring by a competitor, the employer sued, raising numerous claims. When the employee moved to compel arbitration, the employer argued that certain claims arose from conduct that occurred after the employee had terminated his employment, and, by extension, the parties' employment agreement. 171 F.Supp.2d at 1164. Citing *Encore*, among others, the court found that the arbitration provision survived the termination of the contract, and that the parties had not manifested an intent to repudiate it. *Id.* Thus, the court compelled arbitration of the claim.

At the outset, it is clear that neither *Encore* nor *GATX* stand for one of the propositions urged by the Defendants here: neither case purports to establish a rule of law that would suggest that the First Agreement's terms, subsequently cancelled by the Second Agreement, were somehow revived by the Third Agreement's termination of the Second Agreement. The Defendants cite to no other authority endorsing such a "revival" argument, and offer no evidence to suggest that the parties specifically intended[4] the Third Agreement to resurrect the since-terminated terms of the First Agreement. Indeed, the terms of the Third Agreement expressly provide that the Plaintiff's employment will thereafter be subject to the Defendants' generally applicable policies and procedures, *Docket* # 11-6, ¶ C, strongly suggesting that they did not intend that the particularized policies articulated in the First Agreement be revived.

Moreover, the holdings in both *Encore* and *GATX* clearly recognize that an arbitration provision loses any continuing vitality where the parties expressly agree to terminate it. Here, the arbitration clause in the Second Agreement expressly evidenced an intent by the parties to repudiate the arbitration clause in the First Agreement. The arbitration provision in the Second Agreement expressly states "any previous agreements between the Parties concerning arbitration are hereby cancelled, and replaced by this agreement." *Docket* # 11-5, ¶ 8.1. Thus, the terms of the arbitration clause in the First Agreement were completely extinguished by the Second Agreement, and any attempt by the Defendants to invoke the terms of the First Agreement must fail.

---

[4]*Compare generally* 79 Am.Jur.2d Wills § 601 ("a will that has been revoked by a second will may be revived by a later will that revokes the second will, provided the intention to revive it clearly appears in the terms of the later will").

The only remaining question, then, is whether cases such as *Encore* and *GATX* allow the arbitration agreement in the Second Agreement – despite being terminated by the Third Agreement – to nevertheless apply to the Plaintiff's claims accruing after June 30, 2004. Assuming, without necessarily finding, that *Encore*'s holding that a terminated contract's arbitration provision continues to apply to claims that arise after the termination is otherwise applicable here, the Court nevertheless finds that the claims here fall within one of *Encore*'s recognized exception to this rule. Specifically, the Court finds that the claims asserted by the Plaintiff do not arise under the Second Agreement. *Encore*, 53 F.Supp.2d at 1109 (presumption of continuing duty to arbitrate is rebutted "if the dispute cannot be said to arise under the original contract"). The Second Agreement created a comprehensive set of compensation and benefit policies for the Plaintiff. *Docket* # 11-5, ¶ 2.1-3.3. The Third Agreement expressly recites that the parties had disagreements as to how those policies would apply, and explains that the parties desired to terminate that agreement and instead subject the Plaintiff to a different set of compensation policies. *Docket* # 11-6, ¶ A-C. Because the Plaintiff's claims of unpaid commissions and other breaches of contract arise after the effective date of the Third Agreement, it is necessarily the general employment and compensation policies recited in the Third Agreement, not the specialized policies in the Second Agreement, that form the basis of the Plaintiff's contractual claims here. Thus, it cannot be said that the Plaintiff's contractual claims[5] "arise under" the Second Agreement, such that they would be subject to that agreement's arbitration clause. Accordingly, the presumption that the Second Agreement's arbitration

---

[5] The Plaintiff's Age Discrimination claim, arising from his termination in 2005, necessarily arises under the Third Agreement.

provision continued to apply has been rebutted, and the Plaintiff's claims are not subject to arbitration.

## **CONCLUSION**

For the foregoing reasons, the Plaintiff's unopposed Motion to Amend Complaint **(# 6)** is **GRANTED**, and the Amended Complaint **(# 5)** shall be deemed filed and served. The Defendants' Motion to Dismiss for Lack of Jurisdiction, to Compel Arbitration, and to Stay **(# 11)** is **DENIED** in its entirety.

Dated this 27th day of February, 2007

**BY THE COURT:**

*[signature]*

Marcia S. Krieger
United States District Judge